# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>

**ROBERT NEIL SAMPSON,**

    *Petitioner*,

v.

**UNITED STATES OF AMERICA,**

    *Respondent*.

</td><td>

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

</td><td>

Criminal No. RWT-13-0357
Civil No. RWT-17-1481

</td></tr>
</table>

## MEMORANDUM OPINION

Now pending before the Court are Petitioner's (1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate") (ECF No. 132), (2) Motion to Amend 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion to Amend") (ECF No. 143) and a Supplement to his Motion to Amend ("Supplement") (ECF No. 150), (3) Motion to Hold Motion to Vacate, Set Aside, or Correct Sentence in Abeyance ("Motion to Hold in Abeyance") (ECF No. 149), and (4) Motion to Incorporate Exhibits and Appoint Counsel ("Motion to Appoint Counsel") (ECF No. 151). For the reasons discussed below, the Court will deny all four Motions.

### I.    Background Facts

From about May 2012 through August 2012, Petitioner planned and committed a series of armed robberies of two courier companies. ECF No. 64-1 at 10. The last robbery committed on August 31, 2012 was captured on video surveillance recording. *Id.* at 12. Employees of the warehouse in which the robbery took place identified Petitioner from the video recording. *Id.* Officers of the Prince George's County Police Department included two witness identification statements in their Application for Statement of Charges ("Statement of Charges") against

Petitioner. ECF No. 74-1. In a post-*Miranda* interview, Petitioner admitted his involvement in the robberies. ECF No. 64-1 at 10.

Officers also interviewed Petitioner's daughter, Janean Sampson ("Ms. Sampson"). ECF No. 138 at 8. Ms. Sampson gave consent for officers to search her apartment in Baltimore, Maryland in which Petitioner had been residing. *Id.* Although the Government initially told Petitioner that the interview with Ms. Sampson was not recorded, *see* ECF No. 85 at 18 n.7, the interview was, in fact, recorded, *see* ECF No. 88 at 2. The Government provided Petitioner with a copy of the recording as soon as a copy was obtained. *Id.* The recording begins at approximately 12:30 a.m. and lasts for about two hours. ECF No. 138 at 4. During the search of Ms. Sampson's apartment, officers discovered pharmaceuticals and other evidence in a closet used by Petitioner. *Id.* at 3 They then applied for and received a search warrant for the apartment, issued by Judge Northrop of the Circuit Court for Prince George's County. *Id.*

Petitioner was ultimately charged by a nine-count Superseding Indictment with (1) one count of conspiracy to interfere with interstate commerce by robbery, (2) one count of conspiracy to possess with intent to distribute controlled substances, (3) three counts of interference with interstate commerce by robbery, (4) three counts of using, carrying, and/or brandishing a firearm during and in relation to a crime of violence, and (5) one count of possession of a controlled substance with intent to distribute. ECF No. 42. On October 21, 2013, Petitioner pleaded guilty to three of those counts: (1) conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951, (2) interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951, and (3) the use, carrying, and brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). ECF No. 63; ECF No. 64.

Before Petitioner's guilty plea and through sentencing, Petitioner and his counsel asserted numerous challenges to the Government's case. For example, Petitioner and his counsel filed multiple motions to suppress evidence and witness testimony statements (ECF No. 36; ECF No. 37), a motion to dismiss the charges for violations of the Speedy Trial Act (ECF No. 34), two motions to withdraw his guilty plea (ECF No. 73; ECF No. 77), and a motion to dismiss the charges for lack of jurisdiction based on a violation of the Double Jeopardy Clause (ECF No. 75). Petitioner's counsel also challenged Judge Northrop's authority to issue the search warrant for Ms. Sampson's apartment, arguing that Judge Northrop had authority to issue warrants only within Prince George's County, which does not include Baltimore, and thus the warrant was invalid. *See* ECF No. 80 at 9–10. A hearing was held on these motions on September 12, 2014. All of the motions were ultimately denied, either at the hearing or by order on September 15, 2014. ECF No. 96; ECF No. 100.

On September 23, 2014, the Court sentenced Petitioner to imprisonment for a total of 300 months, five years of supervised release, $292,875.09 in restitution, and a $300 special assessment.[1] ECF No. 106; ECF No. 122. Petitioner appealed the judgment against him to the Fourth Circuit, which affirmed on November 10, 2015. ECF No. 127. The Fourth Circuit denied Petitioner's petition for a rehearing and rehearing en banc on January 20, 2016. ECF No. 130. Petitioner then filed a petition for a writ of certiorari in the U.S. Supreme Court, which was denied on June 6, 2016. *Sampson v. United States*, No. 15-9159 (U.S. June 6, 2016); ECF No. 132 at 2.

On May 26, 2017, Petitioner filed his Motion to Vacate in this Court. ECF No. 132. On July 19, 2017, he filed a Motion to Hold in Abeyance Pending 28 U.S.C. § 2255, in which he

---

[1] The original Judgment issued on September 23, 2014, ECF No. 106, was amended on December 9, 2014 to reflect an updated restitution order. ECF No. 122.

asked the Court to stay any decision on his Motion to Vacate until the Fourth Circuit ruled on the petition for writ of mandamus he filed with the Court of Appeals, *United States v. Sampson*, No. 14-4744 (4th Cir. July 17, 2017), ECF No. 78. ECF No. 135. The Court denied Petitioner's Motion to Hold in Abeyance as moot after the Fourth Circuit denied his petition for writ of mandamus as moot on July 17, 2017. ECF No. 142 (citing *United States v. Sampson*, No. 14-4744 (4th Cir. July 17, 2017), ECF No. 79).

The Government filed its Response in Opposition to Petitioner's Motion to Vacate on August 15, 2017. ECF No. 138. Petitioner filed his Reply on September 18, 2017. ECF No. 141. Petitioner then filed his Motion to Amend on November 3, 2017. ECF No. 143. The Government filed its Response in Opposition to the Motion to Amend on November 7, 2017, ECF No. 144, and Petitioner filed his Reply on November 17, 2017, ECF No. 145. Petitioner filed his Supplement on April 26, 2018. ECF No. 150.

On February 1, 2018, Petitioner filed a Motion to Recuse the undersigned from considering Petitioner's Motion to Vacate, ECF No. 146, which the Court denied by order on March 22, 2018, ECF No. 148. Petitioner then filed a second petition for writ of mandamus in the Fourth Circuit on April 2, 2018, challenging the undersigned's neutrality in deciding his Motion to Vacate. *In re Robert Sampson*, No. 18-1362 (4th Cir. Apr. 2, 2018), ECF No. 2. Petitioner subsequently filed his Motion to Hold in Abeyance in this Court, requesting the Court to refrain from deciding his Motion to Vacate until the Fourth Circuit rules on his petition for writ of mandamus. ECF No. 149. Most recently, Petitioner filed his Motion to Appoint Counsel on June 13, 2018.

## II.    Analysis

In his Motion to Vacate, Petitioner brings five claims, some of which are interrelated. The first three claims assert that Petitioner's counsel was ineffective, the fourth claim asserts that the first hour and half of the video recording of Ms. Sampson's interview with law enforcement was deleted, resulting in a *Brady* violation, and the fifth claim asserts that the Court lacked jurisdiction over Petitioner's case.  ECF No. 132.  In his Motion to Amend, Petitioner adds two new claims of ineffective assistance of counsel, both related to the state charges for the armed robberies initially brought against Petitioner.  ECF No. 143-1.  In his Supplement, Petitioner adds an eighth claim, arguing that his conviction under 18 U.S.C. § 924(c) is no longer valid in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).  ECF No. 150.  In his Motion to Appoint Counsel, Petitioner asks the Court to incorporate exhibits into his Motion to Amend and to appoint counsel.  ECF No. 151.

### A.  Motion to Vacate

To prevail on a § 2255 motion, a petitioner must prove by a preponderance of the evidence that "[his] sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."    28 U.S.C. § 2255 (2012); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).  A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Collateral attack is not a substitute for direct appeal; therefore the failure to raise certain issues on direct appeal may render them procedurally defaulted on habeas review.  *United States v. Frady*,

456 U.S. 152, 165 (1982). If the § 2255 motion, along with the files and records of the case, "conclusively show that [the petitioner] is entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255; *Miller*, 261 F.2d at 547. *Pro se* petitions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

**1. Petitioner's Ineffective Assistance of Counsel Claims Lack Merit.**

Petitioner's first three claims assert that his trial counsel did not provide effective assistance under the Sixth Amendment by failing to challenge (1) the arrest warrant based on purported errors in the State of Charges, (2) Judge Northrop's authority to issue the search warrant, and (3) the Court's propriety in contacting the Court of Appeals of Maryland in determining Judge Northrop's authority to issue the search warrant. ECF No. 132 at 4–6. None of these claims has legal merit.

Courts examine claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance claim, a petitioner must show: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland*, 466 U.S. at 687. Under the "performance" prong, the alleged deficiency must be objectively unreasonable and "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 689. The Court must evaluate the conduct at issue from counsel's perspective at the time, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the "prejudice" prong, the alleged deficiency must have prejudiced the defendant, and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the

proceeding would have been different. *Id.* at 687, 694. "[I]n the guilty plea context, a person challenging his conviction must establish 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted). The court must determine that such a decision "would be rational under the circumstances," and therefore a petitioner's subjective preferences are not dispositive. *Id.* (citations omitted). A petitioner must meet the requirements under both prongs to prevail. *Strickland*, 466 U.S at 669.

### a. Petitioner's Claim of Ineffective Assistance for Not Challenging the Arrest Warrant Fails Both **Strickland** *Prongs.*

In his first claim, Petitioner asserts that his counsel was ineffective for failing to investigate supposed errors in the arrest warrant and, as a result, his guilty plea was not knowing and voluntary.[2] ECF No. 132-1 at 1–3. Petitioner asserts that the warrant falsely stated that witnesses positively identified Petitioner from the video surveillance recording of the August 31, 2013 robbery—that is that the 6:24 a.m. identification cited to in the Statement of Charges never occurred. *Id.*; ECF No. 141 at 2. This fabrication is evidenced, he argues, by the fact that the witnesses' identification statements were made at 12:09 p.m. and 11:05 a.m., and not at 6:24 a.m., the time the Statement of Charges states the identifications were made. ECF No. 132-1 at 1–3. This is further supported, Petitioner asserts, by the fact that Officer Bayes's report, which was included in the Statement of Charges by the affiant, Detective J. Boulden, made no mention of the witness identification statements. *See* ECF No. 132-4; ECF No. 132-5. Petitioner argues that had counsel investigated these falsehoods, counsel would have been able to challenge successfully the warrant's validity. *Id.*

---

[2] Petitioner refers to the "arrest warrant" and "affidavit," but the document attached to Petitioner's memorandum to which Petitioner refers is the Application for Statement of Charges. *See* ECF No. 132-4.

As the Government explains in its Opposition, these allegations are contradicted by the record or at least were merely minor mistakes. First, the witness statements attached to Petitioner's memorandum show that two individual witnesses positively identified Petitioner from the video surveillance recording. ECF No. 132-5. The absence of a reference to those witness identifications in Officer Bayes's report is irrelevant. Officer Bayes's report does not state that it is a complete summary of all the evidence collected or that it was created after the identifications were even made. Moreover, the difference in the stated time the identifications were made noted on the Statement of Charges and the actual witness statements does not, in and of itself, suggest any material inconsistency. As the Government explains, the logical conclusion is that the witnesses reviewed the video recording first and then filled out their statements a few hours later. *See* ECF No. 138 at 9. There is nothing to suggest that the signed statements were fabricated. Because there were no errors with the Statement of Charges, the arrest warrant was valid. Accordingly, Petitioner's ineffective assistance of counsel claim fails. *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Even if the Statement of Charges stated the incorrect time of the witnesses' review of the video recording, it would still not be enough to vitiate probable cause and therefore Petitioner's claim would still fail both *Strickland* prongs. "[W]here an ineffectiveness claim is based on counsel's failure to file a motion to suppress," a petitioner must show "that an unfiled motion would have had 'some substance.'" *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 524–25 (4th Cir. 2016) (quoting *Tice v. Johnson*, 647 F.3d 87, 104 (4th Cir. 2011)). Petitioner here cannot make that required showing because, as the Fourth Circuit has made clear, minor errors do not "render the warrant entirely deficient." *United States v. Gary*, 528 F.3d 324, 329

(4th Cir. 2008). Courts routinely reject challenges to warrants based on minor or technical errors in recognition that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *United States v. Moore*, 199 F. App'x 438, 440 (4th Cir. 2004). An arrest warrant is only invalidated if it lacks probable cause after redacting the false statement. *See Cahaly v. Larosa*, 796 F.3d 399, 408 (4th Cir. 2015). When the allegedly incorrect time of the video viewing is redacted, probable cause clearly remains. Accordingly, any challenge by counsel on those grounds would have lacked merit,[3] and thus counsel's failure to bring such a challenge was not a Sixth Amendment violation. *See Smith*, 907 F.2d at 585 n.6.[4]

Based on the foregoing, therefore, Petitioner's first claim fails as a matter of law.

### b. *Petitioner's Claim of Ineffective Assistance for Not Challenging Judge Northrop's Authority Fails Both* Strickland *Prongs.*

In his second claim, Petitioner asserts that counsel was ineffective by failing to investigate Judge Northrop's authority to issue the search warrant for Ms. Sampson's residence in Baltimore, as the apartment was beyond his jurisdictional limit of Prince George's County. ECF No. 132-1 at 3–7. Petitioner's counsel, however, *did* raise this issue, and the Court ruled on the issue's merits. *See* ECF No. 114 at 5:7–6:23 (Hr'g Tr. Sept. 12, 2014); ECF No. 115 at 2:17–3:17 (Hr'g Tr. Sept. 17, 2014). Petitioner even acknowledges that his counsel raised the issue

---

[3] Although Petitioner's counsel did not challenge the arrest warrant on the grounds Petitioner asserts he should have here, Petitioner's counsel did challenge the witness identifications on the grounds that the video recording was not clear enough for the witnesses to have identified Petitioner, and thus the identifications were impermissibly suggestive. *See* ECF No. 52. This motion to suppress suggests that Petitioner's counsel was familiar with witness identifications and actively participated in challenging the Government's case on a more strategic ground.

[4] Moreover, even if the warrant had been invalidated, the arrest would likely still be deemed valid under the *Leon* good-faith exception. *See Gary*, 528 F.3d at 329. Furthermore, Petitioner cannot demonstrate that had the arrest warrant been invalidated, he would have decided not to plead guilty and instead gone to trial. Even if his post-arrest statements were thrown out, there was still substantial evidence against him, including the two positive identifications, his DNA found at one of the robberies, and the evidence of the crime found in his closet. *See* ECF No. 114 at 42:10–19 (Hr'g Tr. Sept. 12, 2014). Additionally, the guilty plea dropped two § 924(c) charges, which decreased Petitioner's mandatory minimum sentence by fifty years. Under these circumstances, it would not be reasonable for a defendant to reject the very beneficial plea offered to Petitioner.

after being asked to do so by Petitioner. *See* ECF No. 132-1 at 4–5. Accordingly, the claim fails the first *Strickland* prong. *See Wilson v. United States*, No. ELH-15-1507, 2016 WL 1366024, at *11–13 (D. Md. Apr. 6, 2016) (rejecting claim "that trial counsel failed to raise a challenge" because counsel did in fact raise that very challenge, although unsuccessfully).

The Court ruled on the merits of the challenge and found that Judge Northrop had the authority to issue the search warrant, ECF No. 115 at 2:17–3:17, and, even if he lacked proper authority and the warrant was deemed invalid, the evidence acquired during the search would have likely still been admitted under the *Leon* good-faith exception or the inevitable discovery doctrine, ECF No. 114 at 66:7–16. Moreover, the motion to suppress the fruits of the search likely would have been denied because the officers had the consent of Ms. Sampson to search the residence, so no warrant was likely needed in the first place. This all goes to show that Petitioner's claim fails the second *Strickland* prong because Petitioner cannot show any prejudice even if the search warrant had been invalidated.

Based on the foregoing, therefore, Petitioner's second claim fails as a matter of law.

### c. Petitioner's Claim of Ineffective Assistance for Not Challenging the Propriety of the Undersigned's Contact with the Clerk of the Court of Appeals of Maryland Fails Both Strickland Prongs.

In his third claim, Petitioner asserts that his counsel was ineffective for failing (1) to ask the Court to rule on Judge Northrop's authority to issue the search warrant, and (2) to challenge the Court's contact with the Clerk of the Court of Appeals of Maryland and the authenticity of the June 29, 2012 cross-designation order attached to the Court's September 12, 2014 Memorandum (ECF No. 99). ECF No. 132-1 at 7–12. Each argument fails both *Strickland* prongs.

First, courts can rule under the good-faith exception instead of determining the underlying validity of a challenged warrant.  *See, e.g.*, *United States v. McCoy*, 55 F. App'x 663, 664 (4th Cir. 2003) ("Assuming without deciding that the warrant was not supported by probable cause, the evidence would be admissible under the good faith exception to the Fourth Amendment's warrant clause.").  Accordingly, it was objectively reasonable for Petitioner's defense counsel not to pursue a meritless challenge to have the Court decide Judge Northrop's authority because the evidence obtained from the search would likely still have been admitted under the circumstances.  *See Smith*, 907 F.2d at 585 n.6.  Petitioner cannot show prejudice because the Court did ultimately rule on Judge Northrop's authority and concluded that Judge Northrop had the authority to issue the warrant.  ECF No. 99; ECF No. 115 at 2:17–3:17.

Second, Petitioner's counsel did raise the issue of whether the Court's contact with the Court of Appeals of Maryland was proper.  ECF No. 115 at 4:9–24; ECF No. 126 at 6:14–11:10 (Hr'g Tr. Dec. 8, 2014).  The Court heard the challenge and ruled on its merits, rejecting the allegations of impropriety.  ECF No. 126 at 6:14–11:10.  Petitioner, therefore, cannot meet the requirements under the performance or prejudice prongs of *Strickland*.  Moreover, counsel's failure to challenge the authenticity of the June 29, 2012 cross-designation order was not objectively unreasonable because the search would have likely been upheld under *Leon* or based on Ms. Sampson's consent, the validity of which was litigated in front of United States District Judge Alexander Williams, Jr.  *See* ECF No. 114 at 65:14–17.

Based on the foregoing, therefore, Petitioner's third claim fails as a matter of law.

**2. Petitioner's Remaining Claims Fail Because They Have Been Procedurally Defaulted.**

In his fourth claim, Petitioner asserts that the Government failed to disclose the entirety of the recorded interview with Ms. Sampson, in violation of *Brady v. Maryland*, thus leading to his guilty plea being unknowing and involuntary. ECF No. 132-1 at 12–16. In his fifth claim, Petitioner asserts that the Court lost jurisdiction over his case because of the Court's initial refusal to rule on the question of Judge Northrop's authority to issue the search warrant. *Id.* at 16–19. These arguments fail because neither was raised on appeal and therefore both have been procedurally defaulted.

Except for claims of ineffective assistance of counsel, "claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice," or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To show cause, a petitioner must show "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Scott v. United States*, No. RWT-10-3528, 2014 WL 671728, at *2 (D. Md. Feb. 19, 2014) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999)). Vague and conclusory allegations are insufficient to demonstrate cause and prejudice. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

In his direct appeal, Petitioner only raised claims of substantive and procedural reasonableness of his sentence, *see United States v. Sampson*, 629 F. App'x 498, 499 (4th Cir. 2015), and thus his claims are procedurally defaulted unless he can show cause and prejudice. He cannot. As the Government points out, Petitioner includes only one, conclusory sentence in his Motion to Vacate, arguing that the failure to include Petitioner's *Brady* claim in his appeal constituted ineffective assistance of appellate counsel. ECF No. 132 at 8. In his Reply, Petitioner seems to argue that prejudice is shown because the Government's failure to

disclose the whole video recording denied Petitioner the opportunity to inquire fully into the circumstances surrounding Ms. Sampson's consent. ECF No. 141 at 24–25.

As the Government points out, Petitioner's ineffective assistance argument fails to show cause and prejudice for three reasons: (1) Petitioner's *Brady* claim was never presented to the lower court and thus has been procedurally defaulted regardless of whether it was raised on appeal; (2) because the *Brady* claim was never presented to the lower court, appellate counsel was not ineffective by failing to raise the claim on appeal; and (3) Petitioner's single sentence addressing procedural default is insufficient.[5] *See* ECF No. 138 at 17. His Reply argument similarly fails to show prejudice because, even if Ms. Sampson's consent had been successfully invalidated, the evidence obtained from the search of Ms. Sampson's residence would likely still have been admitted under the good-faith exception or the inevitable discovery doctrine.

Petitioner also argues through a single, conclusory sentence in his Motion to Vacate that his jurisdictional claim is not procedurally defaulted because it "was birth out of the ineffective of assistance claims." ECF No. 132 at 9. This sentence on its own is insufficient to show cause and prejudice.[6] *See Dyess*, 730 F.3d at 359. Additionally, Petitioner argues in his Reply that jurisdictional claims cannot be procedurally defaulted, and cites to *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001), for support. Although it is true that the Eleventh Circuit has

---

[5] Even considered as an ineffective assistance of counsel claim, the claim would still fail under *Strickland*. Petitioner fails to make the requisite plausible showing that exculpatory evidence exists to make out his *Brady* claim. *See United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011). The only evidence presented by Petitioner of a missing portion of the video recording is the fact that Ms. Sampson's witness statement states the time as 11:00 p.m., but the video only begins at 12:30 a.m. As the Government points out, however, the video shows Ms. Sampson writing and signing her witness statement after 12:30 a.m. The reasonable conclusion is that an officer dated and stated the time on the witness statement before Ms. Sampson completed filling it out. Without more, Petitioner fails to meet his burden.

[6] Even considered as an ineffective assistance of counsel claim, the claim would still fail under *Strickland*. As already noted above, the fruits of the search would have still likely been admitted, regardless of the validity of the search warrant due to Judge Northrop's lack of authority. Therefore, Petitioner's counsel was not ineffective for failing to assert a meritless argument. *See Smith*, 907 F.2d at 585 n.6.

adopted the position Petitioner advances, the Fourth Circuit has not.[7]  Accordingly, both claims are procedurally defaulted.

Based on the foregoing, all five claims asserted by Petitioner lack merit.  Accordingly, the Court will deny the Motion to Vacate.

### B.  Motion to Amend

In his Motion to Amend, Petitioner raises two new claims of ineffective assistance of counsel.  ECF No. 143.  Although difficult to discern, Petitioner appears to assert that counsel was ineffective for failing to (1) inquire into the state court charges pending against Petitioner arising from the same armed robberies for which he was convicted in federal court, and (2) challenge this Court's jurisdiction based on the pending state court charges, suggesting that double jeopardy and other violations resulted from these failures.  ECF No. 143-1.  In his Supplement, Petitioner adds a claim challenging the validity of his guilty plea based on *Dimaya v. Lynch*, 803 F.3d. 1110 (9th Cir. 2015).  For the reasons discussed below, the Court will deny Petitioner's Motion to Amend because the amendments would be futile.

Federal Rule of Civil Procedure 15 governs requests to amend a § 2255 motion.  *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000).  Under Rule 15(a), a party may amend a pleading to which a responsive pleading is required, like a § 2255 motion, "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend only with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  A court "should freely give leave [to amend] when justice so requires."  *Id.*  "In fact, such leave 'should be

---

[7] The Fourth Circuit has not directly addressed the issue, however district courts within the Fourth Circuit have, and they do not appear to adopted such a position.  *See, e.g.*, *White v. United States*, No. 4:13cv64, 2014 WL 2002249, at *12 (E.D. Va. May 13, 2014) (finding "newly formulated jurisdictional challenges rooted in theories not previously presented" were procedurally defaulted in absence of a showing of "cause" or "prejudice").

denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." *Pittman*, 209 F.3d at 317 (citing *Keller v. Prince George's County*, 923 F.2d 30, 33 (4th Cir. 1991)).

Claims under 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which begins to run from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). When a petitioner files a petition for writ of certiorari in the U.S. Supreme Court, the one-year statute of limitations begins to run when the Supreme Court denies the petition. *United States v. Clay*, 537 U.S. 522, 524–25, 532 (2003).

In this case, the Supreme Court denied Petitioner's petition for writ of certiorari on June 6, 2016. *See Sampson v. United States*, No. 15-9164 (U.S. June 6, 2016). Therefore, for the new claims to be timely, they had to have been filed on or before June 6, 2017. The Motion to Amend, however, was filed on November 3, 2017. Accordingly, the claims raised in the Motion to Amend are untimely and thus would be futile. *See Pittman*, 209 F.3d at 317.

In his Reply, Petitioner argues that the new claims raised in his Motion to Amend relate back to those raised in his Motion to Vacate, and thus were timely filed. ECF No. 145. Rule 15(c), as is relevant here, allows an amendment to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(B).

Petitioner's argument is unavailing. In *United States v. Pittman*, the petitioner argued that his motion to amend should relate back to his original § 2255 motion because the

"occurrence" that connected the two was the entire trial and sentencing proceeding. *Pittman*, 209 F.3d at 318. The petitioner argued that the new claim he was seeking to add through his amendment—a claim challenging the sentence enhancement for obstruction of justice—arose from the same conduct as his claim challenging the other sentence enhancements. The Fourth Circuit rejected that argument as too broad of a nexus because the enhancement for the obstruction of justice related to the petitioner's failure to appear at his original sentencing hearing, whereas the other enhancements arose from a prior conviction for dealing cocaine and a determination that the drugs at issue in his conviction were crack cocaine. *Id.* The court explained that if the court were to "craft such a [broad] rule, it would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence. Such a broad view of 'relation back' would undermine the limitations period set by Congress in the [statute]." *Id.*

Petitioner attempts the same thing here as the petitioner in *Pittman*. Petitioner argues that the "nexus between the amended and original claims is rooted in the six [sic] amendment right to the effective assistance of counsel," and that the existence of the state court proceedings against him is traceable to his initial seizure, which he challenges in his first claim. ECF No. 145 at 1–2. However, although all of the claims assert arguments of ineffective assistance of counsel, Petitioner's new claims raised in the Motion to Amend arise from the alleged existence of pending state court charges that Petitioner contends his counsel failed to investigate and that divested this Court of jurisdiction to adjudicate the corresponding federal charges. *Id.* The existence of state court proceedings, however, have nothing to do with Petitioner's claims that his counsel failed to challenge the validity of the arrest warrant based on fabricated witness

identifications, Judge Northrop's authority based on the cross-designation order, this Court's propriety in contacting the Court of Appeals of Maryland, any alleged *Brady* violation regarding the video surveillance recording, or lack of jurisdiction based on the Court's refusal to initially rule on Judge Northrop's authority. Petitioner never mentioned any state court proceedings in his Motion to Vacate, which would have been known to him at the time he filed the Motion. The claims in the Motion to Amend are not overly technical and could have been included in his Motion to Vacate. *See Pittman*, 209 F.3d at 318. Accordingly, the Motion to Amend does not relate back to the Motion to Vacate, and thus the claims raised are barred by the statute of limitations.

Even if the claims in the Motion to Amend did relate back, however, they would still be futile because each fails the *Strickland* prongs. In his sixth claim, Petitioner asserts that the existence of pending state charges against him was a "bar" to the federal proceeding until the state proceedings were concluded. ECF No. 145 at 3. Because the federal case went forward, Petitioner argues that the proceedings violated his protection against double jeopardy and other constitutional rights. *Id.* He contends that his counsel should have investigated the existence of the state court charges and asserted a challenge against the federal case on those grounds. *Id.* In his seventh claim, Petitioner seems to assert that his counsel was ineffective by failing to challenge the Court's jurisdiction to decide the case while the state charges against him were still pending. ECF No. 143-1 at 3.

Assuming that state charges were pending during the time that Petitioner was prosecuted in federal court, Petitioner's arguments lack merit. Petitioner is incorrect that any of his constitutional rights were violated by the federal case proceeding while state court charges arising from the same conduct were still pending. It is well-settled law that the Double Jeopardy

Clause is not violated when independent sovereigns—i.e., the federal government and a state government—bring charges against a person arising from the same conduct, even when those charges are brought concurrently. *Heath v. Alabama*, 474 U.S. 82, 88–89 (1985); *see also, e.g.*, *United States v. McCloud*, No. CR406-247, 2007 WL 1706353, at *69 (S.D. Ga. June 11, 2007). There is no authority to suggest that a federal court would be divested of jurisdiction to hear a case because of pending state charges. Moreover, Petitioner's argument that the *Younger* abstention[8] applies in this case to bar the federal prosecution is unavailing. It is well established that the *Younger* abstention "does not apply to federal criminal prosecutions." *United States v. Burcham*, 91 F. App'x 820, 822 (4th Cir. 2004) (quoting *United States v. Greiger*, 263 F.3d 1034, 1040 (9th Cir. 2001)).

Based on the preceding rationale, Petitioner's claim raised in his Supplement is also untimely. Petitioner asserts that his eighth claim "relates back" to his second claim raised in the Motion to Vacate. ECF No. 150 at 1. In his second claim, Petitioner argues that his counsel's failure to contest Judge Northrop's authority to issue the search warrant resulted in his guilty plea being involuntary and unknowing. ECF No. 132-1 at 6–7. In his Supplement, Petitioner seems to argue that his guilty plea was involuntary and unknowing based on the change in law resulting from the Ninth Circuit's decision in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), in which the court found that the residual clause defining "crime of violence" as incorporated in the Immigration and Nationality Act ("INA") was void for vagueness pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). Because the INA's residual clause was deemed unconstitutional, Petitioner argues, the residual clause under 18 U.S.C. § 924(c) is also unconstitutional, and,

---

[8] "In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation when an injunction is necessary to prevent great and immediate irreparable injury." *United States v. Burcham*, 91 F. App'x 820, 822 n.1 (4th Cir. 2004).

therefore, his § 924(c) count must be vacated.  *Id.* at 2.  Although both his second and eighth claims relate to challenges to the voluntariness of Petitioner's guilty plea, they involve separate sets of facts underpinning the respective arguments—facts regarding Judge Northrop's authority and unrelated facts regarding the pending state charges—and thus do not have a sufficient nexus to meet the Rule 15(c) standard to "relate back."  *See Pittman*, 209 F.3d at 318.

Moreover, *Dimaya*, although recently affirmed by the Supreme Court in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), does not apply to § 924(c) and thus does not provide new law in this jurisdiction.  Accordingly, Petitioner's eighth claim, even if not time-barred, would be futile at this time.  Should the law change at any point in the future, Petitioner is welcome to request authorization to file a successive § 2255 motion on those grounds.  *See* 28 U.S.C. § 2255(h).

Based on the foregoing, all of Petitioner's claims raised in his Motion to Amend and Supplement lack merit.  Accordingly, the Court will deny the Motion to Amend.

### C.  Motion to Hold in Abeyance

Petitioner moves this Court to hold his Motion to Vacate in abeyance until the Fourth Circuit rules on his second petition for writ of mandamus.  ECF No. 149.  Petitioner asserts that because his petition is premised on his challenge to the undersigned's neutrality due to the Court's contact with the Clerk of the Court of Appeals of Maryland regarding the issue of Judge Northrop's authority, Petitioner asks this Court to refrain from deciding his Motion to Vacate until the Fourth Circuit weighs in.  *Id.*  As this Court has twice before considered Petitioner's challenge to the undersigned's neutrality based on the allegations asserted—first as challenged by Petitioner's counsel during sentencing, ECF No. 126 at 6:14–11:10, and second in considering Petitioner's Motion to Recuse the undersigned from considering Petitioner's Motion

to Vacate, ECF No. 146—and found his challenges meritless, this Court is under no obligation to refrain from considering the merits of his Motion to Vacate at this time.

### D. Motion to Appoint Counsel

Finally, Petitioner moves this Court to incorporate a number of exhibits in support of his sixth claim, raised in his Motion to Amend, and to appoint counsel given the "existence of exceptional circumstances, namely, the state proceeding claims, and the complexity of this case." ECF No. 151 at 4. Because the Court will deny Petitioner's Motion to Amend, in addition to his Motion to Vacate, for the reasons set forth above, the Court will also deny Petitioner's Motion to Appoint Counsel. Petitioner is more than capable of articulating his claims and there is no need to appoint counsel for him.

### III. Certificate of Appealability

Petitioner may not appeal this Court's denial of relief under § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 F. App'x 272, 273 (4th Cir. 2007). A certificate of appealability will not issue unless Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hardy*, 227 F. App'x at 273. "A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 F. App'x 296, 297 (4th Cir. 2009). The Court has assessed Petitioner's Motion to Vacate and Motion to Amend and finds that no reasonable jurist could find merit in any of the asserted claims. Accordingly, no certificate of appealability shall issue.

## IV.   Conclusion

Based on the foregoing, the Court finds that Petitioner's Motion to Vacate and Motion to Amend, along with the files and records of the case, "conclusively show that [he] is entitled to no relief," and, as such, will deny both Motions.  *See* 28 U.S.C. § 2255; *Miller*, 261 F.2d at 547. Additionally, the Court will deny Petitioner's Motion to Hold in Abeyance and Motion to Appoint Counsel.  A separate order will follow.


DATE:  July 23, 2018                                  _____/s/_____
                                                                     ROGER W. TITUS
                                                                     UNITED STATES DISTRICT JUDGE